UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
SANDRA L. DEMUTH,

                             *Plaintiff*,

v.                                                 **COMPLAINT
                                                   AND JURY DEMAND**

                                                   Civil No.  1:16-cv-125

MARIA CONTRERAS-SWEET,
ADMINISTRATOR, U.S. SMALL BUSINESS
ADMINISTRATION,

                             *Defendant*.
------------------------------------------------------------------X

## NATURE OF THE CLAIMS

1. Plaintiff seeks the appropriate remedies and damages for discriminatory treatment and unlawful termination based on sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C §§ 2000e) ("Title VII"); age discrimination and retaliation in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. 621 ("ADEA"); and disability discrimination and retaliation in violation of the Rehabilitation Act of 1973, as amended (29 U.S.C. § 1614.101).

## JURISDICTION AND VENUE

2. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and as conferred by 42 U.S.C. §§ 2000e5(f)(3) (amended 1972, 1978, and by the Civil Rights Act of 1991, Pub. L. No. 102- 166).

3. Venue is properly laid within the Western District of New York pursuant to 28 U.S.C. § 1391(b) in that the Plaintiff lives in the Western District of New York, Defendant is located in the Western District of New York, and a substantial part of the acts or omissions giving rise to the claim occurred in the Western District of New York.

## THE PARTIES

4. The Plaintiff, Sandra L. DeMuth, is a natural person, a female, with a place of residence at 14 Alys Drive, Depew, New York 14043.

5. On information and belief, Defendant, U.S. Small Business Association ("SBA"), is a federal government agency with a place of business in Erie County, New York located at 130 South Elmwood Avenue, Buffalo, New York 14202, and is an employer within the meaning of the relevant statutes.

6. The Plaintiff was employed by the Defendant from November 2005 to January 11, 2011 at Defendant's facility located at 130 South Elmwood Avenue, Buffalo, New York 14202.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7. Plaintiff, Sandra L. DeMuth, has exhausted her administrative remedies prerequisite to bringing this claim as follows:

8. On December 22, 2010 the Plaintiff filed a formal EEO complaint with the U.S. Small Business Administration alleging an unlawful discriminatory practice because of sex, disability, age, and retaliation. The date of the most recent discrimination at the time of filing the Complaint was November 15, 2010. Plaintiff's SBA Case number was 11-11-001.

9. On June 26, 2012 the U.S. Small Business Administration made a Final Agency Decision and determined Plaintiff failed to meet her burden to demonstrate Defendant discriminated against her on the basis of sex, age, disability, and retaliation.

10. Thereafter, Plaintiff filed a timely appeal of the Agency's Decision to the Merit Systems Protection Board ("MSPB"). Plaintiff's Docket Number with the MSPB was NY-0432-12-024-1-I-1.

11. On March 15, 2013 the MSPB issued a determination upholding the Agency's Decision and notifying Plaintiff of her right to petition for review of the determination with the U.S. Equal Employment Opportunity Commission ("EEOC").

12. Plaintiff filed a timely petition with the EEOC. Plaintiff's Appeal Number with the EEOC was 0120123117.

13. Thereafter, on May 13, 2015 the EEOC issued a determination affirming the Agency's findings.

14. Thereafter, Plaintiff filed a timely request for reconsideration with the EEOC Office of Federal Operations ("Office of Federal Operations") pursuant to 29 C.F.R. § 1614.405. The Office of Federal Operations assigned Plaintiff a Request Number of 0520150426.

15. On November 18, 2015 the Office of Federal Operations denied Plaintiff's request for reconsideration. The denial included a notice to Plaintiff concerning her right to file a civil action within ninety days (i.e. her "right to sue").

16. Plaintiff then filed the instant Complaint.

## FACTUAL ALLEGATIONS

17. Plaintiff was hired by Defendant on November 28, 2005.

18. Plaintiff worked in Defendant's Office of Disaster Assistance ("ODA") in Buffalo, NY.

19. During the relevant period Plaintiff held the position of GS-12 Information Technology Specialist (Apps. Software).

20. Plaintiff was qualified for her job. During her employment, Plaintiff created the Applications Development portion of Defendant's IT Department. Plaintiff purchased, installed, implemented, and maintained the SQL Server as the relational database management system. Additionally, Plaintiff and a part-time programmer created many custom applications that were demonstrated to scores of visitors to the Buffalo ODA office. Further, Plaintiff regularly received 3s and 4s on her reviews and was the recipient of STAR awards, which designated strong performance.

21. Plaintiff was born in 1949 and was 61-62 years old during the relevant period.

22. Plaintiff began experiencing disparate treatment on the basis of her sex and age early in her career with Defendant.

23. In 2006 a male counterpart, Larry Lanza was designated as a manager, put "in charge," and was given a step increase. Plaintiff was not afforded the same opportunities, despite being hired before Mr. Lanza and having four years of supervisory experience.

24. In July 2009 a male counterpart was sent to Washington, D.C and allowed the opportunity to become familiar with a database management system called "DCMS." Plaintiff was not given the same opportunities despite the fact that Plaintiff's application systems were utilized by DCMS and experience with DCMS would have been relevant to Plaintiff's job.

25. From September 2009 until her wrongful termination in 2011, Plaintiff was isolated, demeaned, and belittled by her supervisor, Tom Guido.

26. Around this same time, William Malek, a younger male, was hired to "backfill" a position previously filled by Charles Appleby, another similarly-situated programmer. However, it later became clear that Mr. Malek was hired to replace Plaintiff without her knowledge.

27. From September 2009 through Plaintiff's wrongful termination, Plaintiff was left out of meetings and precluded from work related conversations relevant to her job, unfairly criticized for her work product, and belittled by her supervisor in front of a younger male colleague. Defendant's actions were intentional and intended to force Plaintiff out of her job.

28. From September 2009 through her unlawful termination, Plaintiff was denied the use of credit hours. Younger colleagues were allowed to use credit hours.

29. Between September and October 2009 Plaintiff was not given the opportunity to work the same amount of days/hours overtime as her younger male counterpart, William Malek. Supervisor Guido gave Mr. Malek preference for overtime, despite the fact that Plaintiff had more seniority and requested overtime.

30. In September 2009 Plaintiff was diagnosed as being legally blind, a condition lawfully defined as a disability under the relevant statutes.

31. On December 1, 2009 Plaintiff underwent cataract surgery in an attempt to correct her vision.

32. Between September and December 2009 Plaintiff sought light duty accommodations from Defendant to accommodate her disability. Because of her poor vision,

3

Plaintiff was unable to see well enough to read. She informed Supervisor Guido that she required accommodations that would allow her to perform her job and continue working.

33. Instead of engaging in the interactive process that should have legally initiated following Plaintiff's accommodation request, Supervisor Guido continued to assign Plaintiff the intricate task of creating and assembling documentation, a job that compromised Plaintiff's already poor vision. As such, Defendant not only denied Plaintiff's request to work light duty, but it intentionally made Plaintiff's job harder.

34. Following her surgery on December 1, 2009 Defendant called Plaintiff at home and required Plaintiff to perform regular work assignments on December 2, 2009 while she was still convalescing from surgery. This surgery was a result of a work-related injury, for which Plaintiff filed for a Workers Compensation claim.

35. From January 2010 through her unlawful termination, Defendant continued to deny Plaintiff access to, Web Portal, a work application needed to perform her job duties. Mr. Malek, however, continued to have access to the same.

36. From September 2009 through her discriminatory termination, Defendant refused to designate Plaintiff as Team Lead or Project Manager of any project, even though she had seniority and four years of management experience over the younger male in the office, Mr. Malek, who became Project Manager less than five months after being hired as a prerequisite to his promotion later to GS-13

37. In February 2010 Plaintiff complained to Supervisor Guido's supervisor, Colleen Hiam, about how Supervisor Guido's disparate treatment of her. Plaintiff complained that Mr. Malek had been made Project Manager and that Mr. Guido favored males. Plaintiff asked how a female could get ahead in IT at the SBA ODA in light of the male dominance in the field. Plaintiff also complained to Luanne, Gail Losgar, and Gina Koop of Human Resources about Mr. Guido's behavior.

38. In response to her discrimination complaints, Defendant began to retaliate against Plaintiff.

39. On March 23, 2010 May 27, 2010, and June 22, 2010 Plaintiff received letters stating that her performance was below expectations. Upon information and belief, these letters were discriminatory and retaliatory and were part of a scheme to fire Plaintiff and replace her with a younger male.

40. The March 23, 2010 Defendant issued Plaintiff a communication it termed a "Letter of Expectations." In this letter, Plaintiff was reprimanded for giving Supervisor Guido the same documentation she and another employee had done in the past.

41. For example, in 2007 Charlie Appleby received an adequate performance rating for assembling an application guide that included only user manuals and installation instructions. However, when Plaintiff later gave Supervisor Guido the exact same documents plus additional documentation, she was told it was inadequate. As a female, Plaintiff was clearly held to a different standard than Mr. Appleby.

4

42. On this same date, March 23, 2010 Defendant also rated Plaintiff as "Below Expectations" for not closing a help desk ticket. At this same time, however, younger males in the Department were also failing to do the same and were not reprimanded.

43. The March 23rd Letter of Expectations also included a number of other false and falsely characterized allegations against Plaintiff including criticisms of Plaintiff's writing and responsiveness. Plaintiff maintains that Defendant was looking for and creating reasons to criticize and discipline Plaintiff with the intent to portray her as a poor performer and eventually terminate her.

44. In May 2010 Defendant continued to target Plaintiff by refusing to grant Plaintiff a one-day extension on her work despite the fact that she had been out sick, and by issuing Plaintiff an "Evaluation Letter of Expectations" wherein it rated Plaintiff as being "Below Expectations."

45. On March 23, 2010 Defendant also assigned Plaintiff to complete a 330-page Applications Manual, the completion of which was not part of Plaintiff's job description. Nevertheless, Defendant assigned Plaintiff this gargantuan task on a tight deadline while Plaintiff had numerous other time-sensitive jobs to complete. Upon information and belief, this assignment was designed to set Plaintiff up to fail and Defendant specifically targeted Plaintiff because of her sex, age, disability, and protected activity.

46. Defendant's May 2010 Evaluation Letter also dinged Plaintiff on her customer relations skills and discriminatorily targeted Plaintiff as "Below Expectations" in other areas of her job performance.

47. On June 1, 2010 Plaintiff suffered a mini-stroke on June 1, 2010. Her physician told her to drop everything and come to his office immediately. Pursuant to her doctor's orders, Plaintiff notified Supervisor Guido via phone the next day. In response, Supervisor Guido reprimanded Plaintiff about her health issues and not being available later in the day by Supervisor Guido.

48. On June 22, 2010 Plaintiff was issued an "Opportunity to Demonstrate Acceptable Performance" letter which again harshly criticized the application manual, and penalized Plaintiff for including certain documents in the manual even though a male employee, Charlie Appleby, was commended when he included the same in a shorter manual he drafted.

49. Here again Defendant was treating Plaintiff disparately on the basis of her sex and was utilizing unlawful criteria to change and effect the terms and conditions of Plaintiff's employment.

50. At the time Plaintiff was issued the June 22nd letter, she had recently suffered a mini-stroke at work and was going to go out for emergency carotid artery surgery. Plaintiff had requested that Supervisor Guido delay the review until after her surgery so as not to cause any additional undue stress, which would adversely affect her health. However, Supervisor Guido ignored Plaintiff's request and called her in to review the discriminatory letter just before she was to go out for her surgery. When Plaintiff again requested reasonable accommodation of deferring discussion of the letter, Supervisor Guido followed her to her office and served her with it anyway.

51.   Defendant's June 22nd letter to Plaintiff continued to criticize and rank Plaintiff as "Below Expectations" in several areas of her job on false and fabricated bases for the sole purpose of establishing a negative performance record for Plaintiff.

52.   Upon information and belief, Defendant's intention was to eliminate Plaintiff and replace her with a younger male. Defendant's reasons for wanting to replace Plaintiff with a younger male were discriminatory on the bases of her age, sex, and disability.

53.   Upon information and belief, Defendant also issued the June 22nd letter to Plaintiff in retaliation for Plaintiff's complaints to Tom Guido's supervisor, Colleen Hiam about Supervisor Guido's disparate treatment of her. The negative performance letters were issued to Plaintiff in close temporal proximity to her protected complaints and were an attempt to force her out of her job once and for all.

54.   In August 2010 Supervisor Guido continued to target Plaintiff by demanding that she submit a minute-by-minute accounting of her time to him. Defendant required Plaintiff to give an exact accounting of her time despite the fact that other employees outside Plaintiff's protected classes were not required to do the same.

55.   On August 24, 2010 Supervisor Guido reprimanded Plaintiff for missing a deadline that was in fact the responsibility of Plaintiff's younger male colleague William Malek.

56.   That same day, Supervisor Guido also reprimanded Plaintiff for the leave slips she had submitted for her carotid artery surgery. Supervisor Guido alleged that the leave slips were done incorrectly, yet refused to tell Plaintiff just what was incorrect about them. Before submitting the leave slips to Mr. Guido, Plaintiff had had them reviewed by another employee, who again reviewed them after Supervisor Guido refused to accept them.

57.   Supervisor Guido's targeted discriminatory agenda continued to negatively affect Plaintiff's health and job satisfaction.

58.   On October 12, 2010 Plaintiff again complained about Supervisor Guido's disparate treatment of her, this time in a letter to Director of Buffalo ODA William Leggiero.

59.   Thereafter, on October 22, 2010 Supervisor Guido notified Plaintiff that he would be changing her work hours from 9:30AM-6PM to 8AM-4:30PM, despite having previously agreed with Plaintiff on her original work hours she had worked for many years. This change negatively affected Plaintiff as she did not feel comfortable driving during heavy traffic hours.

60.   On November 12, 2010 Plaintiff was issued a letter evaluating her performance as "Fails to Meet Expectations" in the Written and Job Specific categories, and "Below Expectations" in the Customer Satisfaction category.

61.   On November 12, 2010 Plaintiff was issued a letter proposing to remove her from a position as Information Specialist, GS-2201-12 for unacceptable performance.

62.   On November 15, 2010 Plaintiff's network privileges were removed, as well as her Visual Studio and SQL Server from her computer, which impeded her performing her job.

63.   On January 11, 2011 Plaintiff was terminated from her job. Defendant terminated Plaintiff in a lengthy letter, the contents of which Plaintiff fervently denied.

64. Defendant then publicly escorted Plaintiff off the premises and past colleagues who then became aware of Plaintiff's termination.

65. Upon information and belief, Defendant terminated Plaintiff on the basis of her sex, age, disability, and in retaliation for her protected complaints concerning the same.

66. As a result of Defendant's actions, Plaintiff has suffered loss of income, loss of meaningful work, loss of retirement and other benefits, embarrassment, humiliation, depression, shame, emotional pain and suffering, and the loss of enjoyment of life.

## FIRST CAUSE OF ACTION
### Discrimination in Violation of Title VII of the Civil Rights Act of 1964, as Amended.

67. Plaintiff repeats each and every above allegation as if fully set forth herein.

68. To establish a *prima facie* case under Title VII for sex discrimination, a plaintiff must demonstrate: (1) she is a member of the protected class; (2) she is qualified for her position; (3) she has suffered an adverse employment action; and (4) the circumstances surrounding that action give rise to an inference of discrimination. 42 U.S.C. 2000e-2; Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466-7 (2d Cir 2001).

69. Plaintiff is in a protected class. She is female.

70. Plaintiff was qualified for her job.

71. Plaintiff suffered an adverse action as she was terminated from her job.

72. The circumstances surrounding Plaintiff's termination give rise to an inference of discrimination as, inter alia, Plaintiff was routinely subjected to different standards and less favorable treatment than her male counterparts.

## SECOND CAUSE OF ACTION
### Discrimination in Violation of the Rehabilitation Act of 1973.

73. Plaintiff repeats each and every above allegation as if fully set forth herein.

74. Because Plaintiff was a federal employee, her disability claims arise under the Rehabilitation Act of 1973. The regulatory standards for the Americans with Disabilities Act, as Amended, have been incorporated by reference into the Rehabilitation Act, and the Court applies them to determine whether there has been a Rehabilitation Act violation. See 29 C.F.R. Pt. 1614; 29 U.S.C. 794a(a)(1).

75. To establish a *prima facie* case for disability under this Act, a plaintiff must demonstrate: (1) she suffers from a disability under the ADA; (2) her employer was subject to the ADA; (3) she could perform the essential functions of her job without reasonable accommodation; and (4) she was terminated because of her disability. Shandrew v. Quest Diagnostics Inc., 819 F. Supp. 2d 181, 186 (W.D.N.Y. 2011).

76. The Plaintiff suffers from a disability within the meaning of the ADA. She was legally blind during the relevant period.

77. The Defendant is an employer subject to the ADA.

78. The Plaintiff could perform the essential functions of her job with or without reasonable accommodation.

79. Defendant terminated Plaintiff because of her disability, and its conduct denying Plaintiff accommodations when requested and, inter alia, targeting Plaintiff on the basis of her disability is indicative of this.

### THIRD CAUSE OF ACTION
**Discrimination in Violation of the Age Discrimination in Employment Act, as Amended.**

80. Plaintiff repeats each and every above allegation as if fully set forth herein.

81. To establish a *prima facie* case under the Age Discrimination in Employment Act, the Plaintiff must show: (1) she was in the protected age group; (2) she was qualified for her job; (3) she suffered an adverse employment action; and (4) the adverse employment action arose under circumstances giving rise to an inference of age discrimination. Pena v. Brattleboro Retreat, 702 F.2d 322 (2d Cir. 1983).

82. Plaintiff was in the protected age group. Specifically, during the relevant period, Plaintiff was 61-62 years old.

83. Plaintiff was qualified for her job.

84. Plaintiff suffered an adverse employment action when she was terminated.

85. Plaintiff's termination arose under circumstances giving rise to an inference of age discrimination as, inter alia, leading up to Plaintiff's termination, she was routinely criticized and reprimanded for conduct allowed for her younger peers. Further, a younger male replaced Plaintiff, giving rise to an inference of age discrimination.

### FOURTH CAUSE OF ACTION
**Retaliation in Violation of Title VII of the Civil Rights Act of 1964, as Amended.**

86. Plaintiff repeats each and every above allegation as if fully set forth herein.

87. To establish a *prima facie* case for retaliation/opposed discrimination, the plaintiff must show that: (1) she engaged in protected activity; (2) the employer was aware of the activity; (3) the employer took adverse actions; and (4) a causal connection exists between the protected activity and the adverse action. Cifra v. General Electric Co., 252 F.3d 205, 216 (2d Cir. 2001).

88. Plaintiff engaged in protected activity when she complained to Supervisor Guido, to Colleen Hiam, and to Bill Leggiero about Supervisor Guido's disparate and discriminatory treatment of her.

89. Defendant was aware of this protected activity because Plaintiff complained directly to Defendant representatives and to the Defendant representatives responsible for the harm.

90. Defendant took adverse actions by, inter alia, issuing Plaintiff numerous negative performance letters, by changing Plaintiff's work hours, by denying Plaintiff the same benefits of employment provided to her peers, and by ultimately terminating Plaintiff's employment.

91. A casual connection exists between the protected activity and the adverse actions as there was close temporal proximity between the protected activity and the adverse actions, and the same decision-makers to whom Plaintiff complained were also responsible for exacting the adverse actions.

## FIFTH CAUSE OF ACTION
### Retaliation in Violation of the Rehabilitation Act of 1973.

92. Plaintiff repeats each and every above allegation as if fully set forth herein.

93. To establish a *prima facie* case for retaliation/opposed discrimination, the plaintiff must show that: (1) she engaged in protected activity; (2) the employer was aware of the activity; (3) the employer took adverse actions; and (4) a causal connection exists between the protected activity and the adverse action. Cifra v. General Electric Co., 252 F.3d 205, 216 (2d Cir. 2001).

94. Plaintiff engaged in protected activity when she complained to Supervisor Guido, to Colleen Hiam, and to Bill Leggiero about Supervisor Guido's disparate and discriminatory treatment of her.

95. Defendant was aware of this protected activity because Plaintiff complained directly to Defendant representatives and to the Defendant representatives responsible for the harm.

96. Defendant took adverse actions by issuing Plaintiff numerous negative performance letters, by changing Plaintiff's work hours, by, inter alia, denying Plaintiff the same benefits of employment provided to her peers, and by ultimately terminating Plaintiff's employment.

97. A casual connection exists between the protected activity and the adverse actions as there was close temporal proximity between the protected activity and the adverse actions, and the same decision-makers to whom Plaintiff complained were also responsible for exacting the adverse actions.

## SIXTH CAUSE OF ACTION
### Retaliation in Violation of the Age Discrimination in Employment Act, as Amended.

98. Plaintiff repeats each and every allegation as if fully set forth herein.

99. To establish a *prima facie* case for retaliation/opposed discrimination, the plaintiff must show that: (1) she engaged in protected activity; (2) the employer was aware of the activity; (3) the employer took adverse actions; and (4) a causal connection exists between the protected activity and the adverse action. Cifra v. General Electric Co., 252 F.3d 205, 216 (2d Cir. 2001).

100. Plaintiff engaged in protected activity when she complained to Supervisor Guido, to Colleen Hiam, and to Bill Leggiero about Supervisor Guido's disparate and discriminatory treatment of her.

101. Defendant was aware of this protected activity because Plaintiff complained directly to Defendant representatives and to the Defendant representatives responsible for the harm.

102. Defendant took adverse actions by, <u>inter alia</u>, issuing Plaintiff numerous negative performance letters, by changing Plaintiff's work hours, by denying Plaintiff the same benefits of employment provided to her peers, and by ultimately terminating Plaintiff's employment.

103. A casual connection exists between the protected activity and the adverse actions as there was close temporal proximity between the protected activity and the adverse actions, and the same decision-makers to whom Plaintiff complained were also responsible for exacting the adverse actions.

## JURY DEMAND

104. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all issues properly in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests this Court issue the following judgments in her favor:

A. Declaring that the Defendant engaged in unlawful employment practice prohibited by Title VII, the ADEA, and the Rehabilitation Act of 1974;

B. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

C. Awarding Plaintiff punitive damages;

D. Awarding Plaintiff attorney's fees, costs, and expenses incurred in the prosecution of this action;

E. Awarding Plaintiff such other and further injunctive relief that this Court may deem equitable, just and proper to remedy the Defendant's unlawful employment practices.

WHEREFORE, Plaintiff demands judgment against Defendant, jointly and severally in an amount to be determined at trial plus interest, punitive damages, attorney's fees, costs, and disbursement of action, and for other such relief as this Court deems just and proper.

Dated: February 15, 2016
       Buffalo, New York

By: *[signature: Lindy Korn]*
Lindy Korn, Esq.
Law Office of Lindy Korn, PLLC
535 Washington Street, Ninth Floor
Buffalo, New York 14203
716-856-5676
lkorn@lkorn-law.com